This Court should reverse the District Court's order revoking supervised release, both because there was insufficient evidence to prove the allegation that Mr. Santillan had committed the crime of improper entry, and because the District Court violated due process when it permitted the government to rely on unexcused hearsay to prove the most important facts Is there a difference in the remedy, depending which one we choose? I believe there is, Your Honor. I believe that if the Court were to vacate on the insufficient evidence ground, the Court would, I would imagine, vacate with instructions that the petition be dismissed, because if the government fails in its first opportunity at an evidentiary hearing Is there a case law saying that with regard to supervised release? Candidly not. There really isn't either way. But if we envision the scenario, for instance, if the government had put on its case, and then the District Court held it in the first instance that it was insufficient, certainly the remedy would be dismissal then. It wouldn't be, well, and then we'll set another hearing and then you can try again and again and again. The idea, I think, is that the government has a chance to put on its evidence at a revocation hearing to prove the allegations against the defendant. And if it doesn't do that, it's failed to do that. There was one case that I was on, the one with the drug testing. That was a supervised release revocation, as I recall. Did we? Your Honor, I believe that was not an insufficiency holding. That holding was that there was a due process violation. And I think if that's the case, I agree with Your Honor, that certainly it would be sent back and the government would be able to try to put on a case that doesn't suffer from that defect. But if the Court holds as I would like it to on the first grounds, in the first instance, that there was insufficient evidence, I think that should end the case. And turning to that point, there was a single, the government sought to prove a single allegation against Mr. Santillan at this hearing, and it was that he had committed this crime of improper entry. Now, Mr. Santillan had not been convicted of that crime beforehand, as is often the case, and he hadn't admitted to committing it. And what that meant is the government had the burden of proving with competent evidence that he, all of the elements of that offense, including... Supervised release violation hearing, isn't it? I apologize, Your Honor. Hearsay evidence is competent evidence in a supervised release violation hearing, is it not? Indeed. Insofar as the rules of evidence, Your Honor, don't apply, the government is permitted to rely on hearsay against the backdrop of due process always, and the limitations on its ability to rely on hearsay to prove the most important allegations. That'll go to my second point, just to briefly close on the first. The allegation of entry since this court's decision in United States v. Oscar over 40 years ago, it's been clear that entry means one thing under the law of 1325 or 6, and that's physical presence free from official restraint in the United States. That's what the government had to prove, and it had to do that with evidence. The government's argument on this appeal, in response to that, seems to be that, based on this court's decision in a couple of contexts regarding jury instructions, and jury instructions about a defendant's theory of defense concerning official restraint, based on those, the government argues, in essence, that it wasn't required to prove with its evidence its freedom from official restraint until the defense put it in dispute with its own evidence, is how I take the government's argument. But that's certainly directly contrary to this court's holdings, not only in Oscar, but repeatedly after that. But doesn't that mean that the core of the problem here is the hearsay confrontation question? Because in an ordinary trial, the case law is that, you know, if the whole trial goes on and the person who actually apprehended him testifies, and I gather, therefore, you could ask this person whether or not they, you have some means of getting the evidence because you have the person and you can ask them, then there is enough evidence by inference if the guy says, no, that seems to be enough, you don't have to ask everybody, and you don't have to give an instruction if there's no evidence. But the problem here, it seems to me, is that you never had any means of getting any evidence on this. That certainly is a problem. I think when I talk about this... That's a due process problem. It is, Your Honor. But when I talk about the sufficiency problem, I'm talking about the evidence that actually was introduced. Even if we take aside the fact that it was hearsay, that it was unreliable, all that, if it were, say, live testimony, and the entirety of the government's presentation with that testimony had been, I arrested Mr. Santillan three miles west of a port of entry, presumably along the border, that would be... Three hundred yards from the border, I thought it was. No, three miles west. But also three hundred yards, I thought. That was not in evidence, Your Honor, and this is, what Your Honor might be referring to is in the complaint, which was not introduced in the evidence. The officer there suggested that it was three hundred yards north. But it was not in the probable cause determination or in the... That wasn't introduced, and the only, literally the only fact, it's somewhat peculiar, it's limited to the probation officer's statement on testifying as to what was in an arrest report, and she said three miles west of the port of entry in an area called East Smugglers. That's it. That doesn't tell us anything at all. And so apart from the fact that that's certainly hearsay, it's unexcused hearsay, there was no proffer as to why the government had to rely on hearsay for that critical fact, it's also just insufficient even if it were good evidence, even if it were reliable evidence, because it doesn't tell the court at all whether he was under official restraint. It suggests that he probably was, since at the border surveillance is most common. The case law seems to differentiate between arrests near the border and arrests far from the border as to what you have to demonstrate. Certainly. Well, the government always has to demonstrate official restraint. Right, but it allows inferences from the fact that the guy's far from the border. Yeah. Absolutely. This is intuitive. In Pargus Rosas, as to voluntariness, which is different, same kind of idea, though. It's so far-fetched, the idea that someone arrested, you know, in San Diego, California, in downtown, entered by accident or involuntarily, that there's a permissible inference. Or was under surveillance the whole time. Exactly. Certainly not. There are so many points at which surveillance would have inferentially, as a common-sense proposition, been broken, that that's just enough by itself, and I take no, I have no dispute with that. But when you're talking about arresting someone, based on what the testimony was here, apparently directly at the border. We just said we don't know that. Well, we don't know, what we do know is three miles west of a port of entry, which suggests right at the border. And there's nothing about whether it was in the interior or anything else, so you don't have any basis for inferring freedom from official restraint. So that's... And I gather you're arguing this is a necessary element of proof, and if it is, it would be maybe unique to this circuit, but it was my impression that it was not a necessary element unless indeed there is something to suggest that he was under official restraint continuously from the circumstances of the case. Yes, Judge Steeve, that's kind of the critical dispute on this first question, and the answer is that it is the element itself. It's not about what the defense puts in dispute. By the very nature of what an element is, it's something the government has to prove with its evidence. That's why critically, and I think you can by negative inference conclude unassailably that this is an element, the court has reversed repeatedly for the failure on the government's part to prove with sufficient evidence freedom from official restraint, which... Counsel, Judge Gould, for the question. Is there any case where the government reversed on that, where the court reversed on that basis where there wasn't evidence in the case about the person being under restraint? Your Honor, if I understand properly, yes, in United States v. Vela Robles, which Your Honor authored, there was no direct evidence that he was surveilled. There was a lack of evidence that he was not surveilled. So there, an arresting officer and a person who took custody from the arresting officer were the witnesses. The guy who took the custody after the guy was arrested certainly didn't know what was happening at the time of arrest. The other officer only testified about his common practice of usually surveilling or usually apprehending people immediately when they cross the border, and he suggested they often surveilled them. But he didn't testify affirmatively that he was not surveilling them. I think the idea is that in that case, I'm sorry, that's not Vela Robles, that's Ruiz Lopez, Your Honor, United States v. Ruiz Lopez, my apologies. In that case, the court held that it was insufficient evidence of freedom from official restraint precisely because the government had introduced nothing at all to show that he was ever free to go about and mix with the population, and all of the evidence suggested otherwise. It's very analogous to the situation here, which is the only evidence suggests otherwise. If you say I arrest someone at the border, which is likely what happened here, based on the little evidence we have, it's very suggestive of the idea that they were surveilled as they walked into the country. I'd like to reserve more time. May it please the Court, Larry Spong for the United States. Your Honors, there's just two elements to this offense. That is to prove that, one, the person was an alien. With that, we put in his plea agreement and the judgment from the previous case. And the other is that he entered at a time and place other than as designated. But our case law is lucid about the fact that enter means enter free of official surveillance. And the case law that says that about the instructions or about the sufficiency of the evidence and so on, nobody's doubting that that is an element. It's a question of how you could prove it, but not that it is an element. I think, Your Honor, I would respectfully disagree. I think voluntariness is an element. And that can be inferred from the fact that someone is found in the U.S. What particular type of involuntary, the government need not prove the negative. So for example, if someone got into a car in Tijuana as a passenger and the driver told him I'm just going to the store up the street, but instead drove across the border while the passenger was asleep, we would say that's not voluntary. But we certainly didn't have to put on evidence that that didn't happen in this case. And here there's just no dispute about any of the evidence that was in fact put in. But how could there be? How could he, without being able to cross-examine the person who actually apprehended him or some live body who was there, how could he ever know whether somebody was watching him or not? How could he? He could have called that officer himself. Or at the very least, had I been told we believe that he was under official restraint, I would have at that point probably said, okay, now it's time to bring the officer in. Well, he did say that and you could have said, okay, I want to continue us to bring in the officer. But we didn't. But he could have also. And frankly, you have to remember, this isn't a prosecution by the government. The government's in sort of an odd position here. We're in the position of trying to assist the court in finding out if there's a violation of trust. And that's what really was going on here. I know it was an unpublished decision. I know it was unpublished, which was exactly this, in which the case, the supervised release was reversed. The Garcia case, I believe you're talking about. Precisely. That case is very different on point, very different factually. There, the prosecution was simply going forward on the fact that the person had pled guilty to a 1325A1, which we have in this case, and an A2, which is an eluding examination. And there, they were relying on that. They put on no testimony. But the only testimony here was the person reading the same thing that they said wasn't good enough there. Well, it wasn't good enough there because nobody testified to it. I mean, is there a difference between having a probable cause statement and having somebody testify that I read the probable cause statement and this is what it says? I think there is. Really? Why? And one of the cases even says, when it looks to the due process violation, whether it was a sworn statement or not. And I think that's important here. Well, what's the sworn statement? Is the sworn statement, as I read the probable cause statement, this is what it says? Yeah. And what good does that do anybody? Well, I think it's enough to establish the inference that he entered voluntarily. And how is it different from just introducing the probable cause statement, the piece of paper? Because... All she's doing is reading the piece of paper. Here's what I think is the crucial difference and why, again, if this were a government prosecution, I would agree. We're assisting the court. The court should be able to rely on its probation officers to use what it usually relies on in the absence of a real dispute. And that's what... So here, when we put on the probation officer, that allows a cross-examination, but he also could have called an officer. But how could he cross-examine her? What's he going to cross-examine her about? He's going to say, was there official restraint? I don't know. I only know what's on the piece of paper, right? And she certainly didn't testify as to that. But all I can say is, what I'm trying to, in support of the district court here, is the district court looked at what the evidence and said, I have enough to infer by a preponderance of the evidence. But he was wrong about that, wasn't he? The fact that the guy was sitting there was not a reason to infer that he wasn't under official surveillance. He wasn't just sitting there. He also had no legal right to be in the U.S. Yes, he did. Correct. Correct. So that says, that allows the court, I think. That works if you're right that under official surveillance is not part of the inter-element. But if you're not right, then the fact that he's sitting there has nothing to do with it. Yeah. If, well, the fact that he's sitting there has nothing to do with it. But the fact that he had no legal right, I think, puts a little more oomph behind it. Counsel, if I could interject, just to clarify my mind. I don't think the statute itself says the entry has to be without official restraint. But we do have cases with that kind of language in it. So what I want to know is, does the government agree or disagree that entry requires that it be without official restraint? That that's an element that the government has to prove. I would disagree where there is no evidence of that. And that's based on those jury instructions. If you don't have to give a jury instruction about official restraint, then by definition it cannot be an element. All right. Well, here's the United States versus the Gonzales story. Since 1908, federal courts have recognized that entering the United States requires more than mere physical presence to enter. They must cross the United States border free from official restraint. Yes, your honor. In every case that says that, it's because there's some evidence of official restraint. But it's stating what the actual concept of entry is, and you're saying it's not. Well, I would say it is voluntary. I just read you something that doesn't say voluntary. To enter, an alien must cross the United States border free from official restraint. And I'm simply trying to persuade the court that that's the particular type of voluntariness that was at issue there. Had he alleged that he fell asleep in a car, the court would say you would have to prove that he wasn't asleep in the car. That doesn't make it an element. It's the voluntariness, and that can be inferred from the fact that he was found here in the U.S. You're right. I think I would agree. If you absolutely say it's an element that must be done, then we're in a much different position. But I still think the district court had enough evidence that it could make that inference in this situation. Well, under surveillance, the alien has still not made an entry despite having crossed the border with the intention of evading inspection because he lacks the freedom to go at large and mix with the population. I'm still reading from the same case. The only other thing I could say, again, Your Honor, is, again, we're in the supervised release context. And this legal fiction that you don't enter because you're looked at really only serves to distinguish between an attempt and an actual entry. And in terms of a breach of trust, it doesn't matter whether he attempted or he did it. He breached the trust. Well, that may be. Maybe he could have alleged something else. But what was alleged was that he violated 1325. Yes, but I absolutely agree that that was the only allegation. Does 1325 include both attempts and consummated? It doesn't specifically say attempt. But that's the result of the case law of official restraint is that, yes, it is now attempt. What I wonder is whether our panel, given this language in these other cases, including what Judge Berzon read, given that language, is our panel bound to view entry without official restraint as an element of entry? I think my best. Or are we free to say that's dictum or the facts of those cases are different? I would say the facts of those cases are different. And the fact that that instruction need not be given to a jury at all, unless there's some evidence of it, means by definition it can't be an element. So, yes, this court has spoke of it in that. But that's because the facts of the case suggest that there was some sort of surveillance. I mean, it's quite a species of harmless error, wasn't it? I mean, that is, since there was no evidence of it, not given the instruction, it couldn't have made any difference. Right. But if it's something that the government, if that's a negative that the government always has to prove, then they'd have to have an instruction, no matter what. Well, even if it doesn't make a difference? Of course not. I mean, yeah, you're supposed to have an instruction. But if the instruction couldn't matter because there was no evidence, that's a different problem. But here he never got a chance to put on the evidence. Well, with all due respect, I think he could have called the officer himself if that's really what was going on here. But there's just no dispute here that that's what happened. It's the fact that he was found near the border that brings up this speculation. And Castellanos-Garcia says that kind of speculation is just not sufficient. Okay. Thank you very much. Thank you. I'll give you one minute, and then we're going to take a break. Thank you, Your Honor. I'm going to try in this brief time to hit a couple points very quickly. The most critical one, I think, is there's no such thing as an element that the government has to prove sometimes, depending on what the defendant disputes by putting in his own evidence. An element is, by definition, something the government bears the burden of proving, whether by a preponderance or reasonable doubt or anything else. The jury instruction cases don't inform – they're not inconsistent with this. Well, explain to me why. Your Honor, so I have a great example from a related context. In 1325 or six prosecutions, another element is alienage. Alienage can be a complicated concept. People derive citizenship through their parents under a variety of different legal regimes in place at the time they're born. Derivative citizenship, we need sometimes instructions for that because a jury needs to understand that, but sometimes not because that's not really what the evidence at the end of a trial, at the conclusion of a trial, is in dispute about. A district court doesn't have to instruct on derivative citizenship, but that doesn't mean that alienage suddenly ceases being an element. It's an element. You just don't need to instruct a jury on the complicated theory of defense or the complicated definitions of the words in an element when that evidence – when the evidence at trial doesn't show that that's in dispute, that doesn't relieve the government of its burden to prove it in the first place. The government keeps talking about voluntariness. Certainly, that is distinct. The government's confusing these things. They're quite distinct. Voluntariness is volition, and the official restraint is surveillance. But the reason that the government didn't have to do anything except show that the – didn't have to prove that he wasn't on a car falling asleep is because there was he was arrested within the interior of the country, and so from that you can infer. The government didn't have to disprove the negative and all these speculative possibilities. That's not the case here. We don't have any evidence that he was arrested anywhere but right at the border. Okay. Thank you very much. Thank you, Your Honor. Thank you both for your arguments. The case of United States v. Sanchion is submitted, and we'll take a break. Thank you.
judges: Gould, Berzon, Steeh